## SADLER v. PENNSYLVANIA R. CO.
### No. 5544.

Circuit Court of Appeals, Fourth Circuit.
Feb. 14, 1947.

---

[3] Cf. Moriarty v. Tomlinson, 58 S.Dak. 431, 235 N.W. 363.

W. M. Minter, of Mathews, Va., and R. Arthur Jett, of Norfolk, Va., for appellant.

Thomas H. Willcox, of Norfolk, Va. (Willcox, Cooke & Willcox, of Norfolk, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is a suit under the Jones Act, 46 U.S.C.A. § 688, to recover damages for wrongful death. There was verdict and judgment for defendant and plaintiff has appealed. The decedent, William Carroll Sadler, was a cook on a barge of the defendant Pennsylvania Railroad Company and was drowned in the night time while the barge was tied up at the dock alongside another barge of the same defendant. Negligence was alleged in the mooring, lighting and equipment of the barges and in the efforts made to rescue the decedent. During the course of the trial the court struck out the evidence as to negligence in the mooring, lighting and equipment of the barges, refused a prayer for instructions with regard to the duty of the barge owner to have life saving equipment reasonably accessible and limited the consideration of the jury to negligence in the attempt at rescue. The only question presented by the appeal is the correctness of this limitation of the issues submitted to the jury.

The two barges were car floats of the defendant, approximately 350 feet in length. They were moored near together but not as close to each other or to the dock as was possible, and as a result they had drifted until they were three feet apart amidships and six to ten feet at their offshore ends. There was evidence that the guard rails surrounding them were rotten and broken in places and that they were so inadequately lighted that employees found it necessary to use flash lights in going about them on the night in question. In the crew's quarters, which were from twenty to thirty feet above the deck amidships and were reached by ladders, there were life preservers, and on the main bridge of one of the barges, also twenty to thirty feet above the deck, there were some life rings; but no life equipment of any sort was on the decks, from which life saving operations would normally be conducted.

The theory of plaintiff is that decedent was going from one barge to the other, when in some way, because the barges had drifted apart, because of the defective condition of the guard rails, because of the defective lighting or because of the combination of all these things, he fell or was thrown between the barges into the water. No one saw him fall, but, when discovered, he was in the water between the barges about amidships, was calling for help and, by treading water, was managing to keep himself afloat. He continued to struggle and call for help for several minutes, during which a number of employees gathered around and attempted to rescue him. A heaving line was found at the end of one of the barges and was thrown to him, but because it was too light the wind blew it away so that he was unable to grasp it. A heavier rope was then found and thrown to him, but by that time he was too far gone to help himself. One of the employees then very heroically descended between the barges and, with the aid of a boathook which had been brought from a nearby tug, lifted him from the water and to the deck. Efforts were made to resuscitate him but without avail.

We think that the trial judge was in error in limiting the jury's consideration of negligence to what occurred in the attempt at rescue. While it is impossible to say with certainty what caused decedent to fall between the barges, it is a reasonable inference from the evidence that in attempting to go from one to the other he fell between them as a result of the defec-

tive lighting. There is nothing to indicate that he was shoved or pushed overboard, or that he was intoxicated, or that he was attempting to commit suicide. Under such circumstances the cause of the fall can no more be said to be speculative than in the case of a man found in the hold of a vessel beneath an unguarded hatch. See Johnson v. Griffiths S. S. Co., 9 Cir., 150 F.2d 224. It is the duty of the vessel to provide a safe working place for members of its crew; and where there is evidence that it failed to do so and proof of circumstances from which it can reasonably be inferred that injury resulted from such failure, the case is for the jury. It is elementary that proximate cause need not be established by direct evidence but may be proven by circumstances. 38 Am.Jur. 1033. We think that the evidence of negligence with respect to the lighting of the barges is sufficient to take the case to the jury, but not the evidence as to mooring or as to the condition of the guard rails.

■ An even stronger showing of negligence was made with respect to the failure of defendant to have adequate life saving equipment readily available on the decks of the barges, from which the attempt to rescue decedent was conducted and from which, in the nature of things, attempts to rescue men overboard would necessarily be made. One cannot escape the conclusion that the drowning of the decedent was a wholly unnecessary tragedy, and that, with decedent struggling in the water and calling for help and with a half dozen or more employees trying to help him, he could have been saved if adequate life saving equipment had been at hand. As it was, men had to run half the length of the barge to obtain the heaving line, which was found to be inadequate when obtained. If there had been life rings or life preservers on the deck, they could and doubtless would have been seen and used, with every probability that their use would have resulted in saving decedent's life. The fact that there were life preservers in the crew's sleeping quarters and life rings on a hook on the bridge of one of the barges was not sufficient. They were out of the way and out of sight, twenty or more feet above the deck. They were not thought of in the excitement of the moment, whereas proper equipment on the deck would have been seen and used instead of the inadequate heaving line. The judge properly charged the jury that men are not chargeable with errors of judgment in the excitement of an emergency; but, because memory and judgment cannot be depended upon when men are excited, it is of the utmost importance that life saving equipment be placed where it will be needed and where in case of the excitement of an emergency such as existed here it will not be overlooked.

■■ In Harris v. Pennsylvania R. Co. 4 Cir. 50 F.2d 866, this Court laid down the rule that the duty rests upon the vessel to rescue a member of the crew who has fallen overboard. And, as Judge Nields pointed out in The G. W. Glenn, D.C., 4 F.Supp. 727, 730, "The duty of the ship and owner to rescue a seaman overboard necessarily implies the duty to provide the means of rescue. Normally these means include an effective lifeboat, available life preservers, or life rings". See also on this point Tompkins v. Pilots Ass'n for Bay and River Delaware, D.C., 32 F.Supp. 439. The duty is not performed unless the life preservers or life rings are "available", i. e. unless they are so placed on the vessel as to be ready for instant use when needed. See Kirincich v. Standard Dredging Co., 3 Cir., 112 F.2d 163. Under the evidence here, it was for the jury to say whether the failure of the defendant to have life saving apparatus available on the deck of the barge, the place from which efforts to rescue men overboard would ordinarily be conducted, did not constitute negligence to which the failure of the effort to rescue decedent was attributable.

■■ For the reasons stated, there was error in striking the evidence as to negligence in the lighting of the barges, in refusing plaintiff's instruction as to the duty to have life saving equipment reasonably accessible and in limiting the consideration of the jury to negligence in the attempt to rescue. The judgment appealed from will accordingly be reversed and the case will be remanded for a new trial.

Reversed and remanded.