**137**

LARSEN v. UNITED STATES.
No. 17703.

District Court, E. D. New York.
June 30, 1947.

Herbert J. De Varco, of New York City, for libellant.

J. Vincent Keogh, U. S. Atty., of New York City (Tompkins, Boal & Tompkins and Arthur M. Boal, all of New York City, of Counsel), for respondent.

GALSTON, District Judge.

Albert H. P. Larsen was employed as a seaman on the S/S John W. Burgess, owned by the respondent. The vessel, at the time of his death, had been, on May 29, 1945, tied up alongside the shipyard of the Stockton Ship Works at Stockton, California.

The vessel was a Liberty ship, and at the time of mooring apparently the ship's gangways could not be used because the part of the ship to which they were attached was not alongside the pier. In consequence a wooden gangway was supplied by the shipyard. This had a rope rail on one side only. From the top of the gangway to the deck of the John W. Burgess there were two steps. It appeared that the gangway was used by the shipyard workers, and had also been used by some of the vessel's crew. Larsen went ashore some time after 5 o'clock on May 31st, accompanied by two other seamen. They left him in Stockton at about 6:55 p. m., and that was the last time he was seen alive. His body was found on the dock, lying partly below the head of the gangway on the aft side. The coroner found the cause of death to be multiple skull fractures, masceration of the brain and fracture of the right femur. From the nature of the injuries revealed in the autopsy he concluded that death resulted from a fall of a minimum distance of 15 or 20 feet.

The issue presented is whether negligence on the part of the respondent was the cause of the death.

The officer in charge of the ship at the time that it was moored knew that it would be impossible to use the fixed accommodation ladder, and though the ship was docked by the shipyard crew, it does not appear that any request was made by any of the ship's officers to dock the ship so that the ship's ladder could be used. The ship must be charged too with knowledge of the rigging of the shipyard gangway.

The deposition of Coombes, second mate in charge at the time of the mooring of the vessel at the shipyard, discloses in cross-examination after some pressing that the gangway was unsafe. Wigsten, the night relief officer in charge from 5 p. m. until 8 a. m., who was also present when the shipyard rigged the gangway, made the same admission. Indeed, because he considered the gangway unsafe, Wigsten

138

lashed an oar to the ship's rail to aid those who stepped off the gangway to the deck in resting the hands so as to steady themselves before taking the step from the gangway to the rail. It seems an inevitable inference that the gangway, as provided, was unsafe and dangerous.

■ Now that brings up for consideration the question of determining whether Larsen met his death as a result of falling from the gangway. No one saw him fall; but it is significant that an entry in the ship's log, under date of June 1, 1945, reads: "At approximately .0125 Albert H. P. Larsen, night cook and baker, found dead at the foot of the gangway by M. W. Langston, S/2C. Death was result of fall from top of gangway."

Wigsten, when asked concerning this entry, said that there was only one thing wrong with it—that Larsen's body was found not at the foot of the gangway but at the head of the gangway on the dock. He said: "Yes, but he had fallen from the top of the gangway", on a line direct to the dock below him. When taken with the coroner's testimony, the description of the gangway, the admissions made by the ship's officers, there seems no reasonable lurking doubt that the decedent fell from the gangway and that the gangway was an unsafe appliance.

There is no evidence of contributory negligence; nothing that indicated suicide or insobriety.

So on the question of liability it must be held that it was negligence chargeable to the respondent that was the proximate cause of Larsen's death. See Sadler v. Pennslyvania Rr. Co. 4 Cir., 1947, 159 F.2d 784; Johnson v. Griffiths S/S Co., 9 Cir., 150 F.2d 224.

■ In order to save the expense of a reference to a master, testimony was received at the trial to enable the court to determine the amount of the award in the event that liability of the respondent was established, as it has been. The libellant, who sues as an administratrix, is the widow of Larsen. At the time of his death he was forty-seven years old, as was she. They had been married twenty years and had three children, respectively eighteen, seventeen and fourteen years of age at the time of his death. Somewhat vaguely she testified that his annual earnings as a stone cutter prior to his enlistment in the merchant marine were $3,000 a year. The widow testified that while he was in training, out of his pay of $27 she received $20 every two weeks. Apparently she met most of his incidental expenses, including insurance premiums and clothes, but not his commutation fare to New York before he went into the service. A pecuniary award to the libellant under the provisions of U.S.C.A., Title 46, Sec. 688 is warranted, but to establish a mathematical formula to meet exactly the pecuniary loss sustained is not possible. While employed in the merchant marine service he received $137.50 per month plus overtime and his subsistence. Based on a life expectancy of twenty-three years (the widow also had the expectancy of twenty-three years), figuring the present worth of an award on the basis of a three per cent annual return, the libellant is entitled to a decree of $23,000.

Concurrently herewith appropriate findings of fact and conclusions of law will be filed.