George J. EVANS, Administrator of the Estate of Lars Peder Hoggen, Deceased, Plaintiff-Appellee,

v.

SCHNEIDER TRANSPORTATION COMPANY, Defendant-Appellant.

No. 98, Docket 24769.

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1957.

Decided Dec. 31, 1957.

S. Eldridge Sampliner, Cleveland, Ohio, Charles R. Sandler, Buffalo, N. Y. (Harvey S. Goldstein, New York City, of counsel), for appellee.

Russell V. Bleecker, Cleveland, Ohio, William J. Regan, Buffalo, N. Y. (Russell V. Bleecker, Cleveland, Ohio, of counsel), for appellant.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

LEIBELL, District Judge.

The plaintiff shipped as a wheelsman on defendant's steamer the "Pam Schnedier" on September 29, 1952. He signed on, for two weeks, until October 12th. He claims he contracted a heavy cold during this period; but he reshipped on October 13th and for successive periods of two weeks each until December 7th. He went to a Buffalo hotel for a week and on December 14th was taken to the Buffalo General Hospital. His illness was diagnosed as advanced tuberculosis. Since he was a seaman, he was moved to the Cleveland Marine Hospital where he was an inpatient five months. He was then transferred to the Detroit Hospital and remained there for about ten months.

This action was commenced November 29, 1954, in the Northern District of Ohio and was removed by stipulation to the Western District of New York in September 1956. Plaintiff claimed $65,-000 in damages in his first cause of action based on defendant's negligence and the vessel's unseaworthiness. He also claimed $5,000 in a second cause of action for maintenance and cure. Both causes of action were tried at the same time before Judge Morgan and a jury. Near the end of the trial it was stipulated that the second cause of action be submitted to the court for determination on the evidence, and not to the jury. The basis for plaintiff's first cause of action is the alleged lack of heat in the pilot house due to open windows and defective radiators, and the alleged stuffy and unsanitary condition of his living quarters, due to inability to open the port hole and to drafts when the door was opened.

Apparently the jury concluded that there was a causal connection between the alleged negligence of the defendant, or the alleged unseaworthiness of the ship and the claimed aggravation of an inactive case of tuberculosis from which plaintiff had previously suffered. If the jury believed plaintiff's witnesses it could find liability.

The jury verdict for the plaintiff in this case was for $32,500.00. Plaintiff had claimed $7,500 for wages actually lost to the date of trial. The balance of $25,000 could have been for loss of earning capacity for the future: plaintiff had claimed total disability and he had an eight year work-life expectancy. Plaintiff's attorney, in his brief, figures that there would have been a loss of future earnings of $3,750 a year for eight years, having a value, as of the date of trial, of $26,235. There was also some pain and suffering. We cannot say that the jury's verdict was excessive. Plaintiff died after the trial of the action and

before argument of the appeal. Evans, as Public Administrator, has been substituted as plaintiff-appellee.

On the claim for maintenance and cure, the Court allowed the amount of $6 a day for the following periods:

(1) December 7 to December 18, 1952

(2) April 12 to September 30, 1954

(3) September 29 to October 13, 1955

(4) December 5, 1955 to April 1, 1956

(5) July 16 to October 10, 1956.

The first period: It appears that plaintiff was in the Buffalo General Hospital from December 14, 1952 to December 19, 1952. But the difference is slight and defendant does not question the allowance for this period.

■ The second period: Plaintiff was on an outpatient basis from the Buffalo Marine Hospital and received municipal relief for six months. A defendant is liable for the maintenance and cure even though the injured plaintiff is on relief for the period in question. The primary responsibility was defendant's. Plaintiff's estate might have to account to the municipality out of any recovery for maintenance. See N. Y. Social Welfare Law, § 104 as amended April 19, 1953. Defendant does not question the allowance for this period.

■ The third period: Plaintiff had been an inpatient at Detroit Marine Hospital from June 9, 1955 to September 29, 1955. He shipped on the S.S. Malieota on October 13, 1955. Defendant objects on the ground that plaintiff was discharged from the hospital as "fit for duty" on September 29, 1955. The Court allowed plaintiff maintenance and cure for fourteen days at $6 a day until October 13th. Any maintenance and cure allowance for this third period was improper.

■ The fourth period was during a winter lay-up of lake shipping. Plaintiff had served on the Malieota from October 13, 1955 to December 4, 1955. He was still able to work as a seaman but the lake ships were not sailing during the customary winter lay-up of four months. The defendant objects to being charged maintenance and cure during this period. Plaintiff's unemployment was not related to his physical condition. He reported to a doctor only every two months during the winter of 1955–1956. The allowance of maintenance and cure for this period had no legal basis.

■ The fifth period started when the lake shipping was tied up by a strike. Plaintiff had been working aboard ship from May 26, 1956 up to the time the strike began on July 16, 1956. It was the strike that put him out of work. There is no proof as to when the strike ended. He "took it easy" for 2½ months until October 6th, and testified that during that time he "didn't feel so good, because when the humidity got high I am short winded." He resumed work aboard ship on October 6th and continued working until December 7, 1956. Defendant objects to the allowance of maintenance and cure for this period. It was not properly attributable to plaintiff's physical condition and should not have been allowed.

For all five periods the court found that the "plaintiff was disabled"; and "was unable to secure employment similar to his regular work." As to the third, fourth and fifth periods that finding is clearly erroneous.

■ There is another basis for rejecting the trial court's allowance of maintenance and cure for the third and fifth periods. The plaintiff claimed loss of wages for the parts of the periods of eight months each year during which the lakes were open for shipping. His claim for loss of wages was $7,500 to the date of the trial. Plaintiff-appellee's brief shows how it was calculated. The loss of wages for the third and fifth periods was included in the total of $7,500 claimed as damages in the first cause of action, and presumably was awarded in the jury's verdict of $32,500 as plaintiff-appellee's brief indicates. Plaintiff cannot recover maintenance and cure in addition to loss of wages, for the same periods. Krey v. United States, 2 Cir., 123 F.2d

1008, 1010; McCarthy v. American Eastern Corporation, 3 Cir., 175 F.2d 727, 729; Perez v. Suwanee Steamship Co., 2 Cir., 239 F.2d 180, 181; and Ortiz v. Grace Line, Inc., 2 Cir., 250 F.2d 124.

Maintenance and cure from September 30, 1955 to October 13, 1955 (14 days at $6 a day) amounts to $84; from December 5, 1955 to April 1, 1955 (116 days at $6 a day), $696; from July 16, 1956 to October 10, 1956 (87 days at $6 a day), $522. The total of the three is $1,302. The amount of maintenance and cure allowed by the court was $2,394. It should be reduced by $1,302 to $1,092.

The judgment for $32,500, filed May 22, 1957, based on the verdict of the jury, is affirmed. The judgment for $2,-394 filed May 28, 1957 for maintenance and cure is modified and reduced to $1,-092 and as thus modified is affirmed. No costs will be allowed to either party on this appeal.