**Edless LAFONT, Appellant,**

v.

**OTTO CANDIES, INC., et al., Appellees.**

**No. 22856.**

United States Court of Appeals
Fifth Circuit.

Dec. 1, 1966.

---

Ralph E. Orpys, New Orleans, La., for appellant.

George B. Matthews, Charles E. Lugenbuhl, Lemle & Kelleher, New Orleans, La., for appellees.

Before RIVES, THORNBERRY and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge:

Lafont, a seaman, sued the owner and the operator of his vessel for personal injuries received when, by mistake, he swallowed pine oil instead of apple juice. The complaint counted on negligence and unseaworthiness under the Jones Act,[1] and on maintenance and cure. The defendants moved for summary judgment with a supporting affidavit of Cheramie, the individual defendant, and upon Lafont's deposition. As to the counts based upon negligence and unseaworthiness, the district court granted the defendants' motion for summary judgment, but retained jurisdiction of the claim for maintenance and cure. As permitted by Rule 54(b), Fed.R.Civ.P., the court determined that there was no just reason for delay and directed the entry of final judgment dismissing with costs Lafont's action insofar as the counts for negligence and unseaworthiness are concerned. On appeal, the sole question for decision is whether, as to the counts for negligence and unseaworthiness, there is no

genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. Rule 56(c), Fed.R. Civ.P.

Lafont was one of the three crew members (plus a young boy called the "A.B.") on the THREE SISTERS II, a service vessel for offshore oil well drilling operations. At approximately 10:45 P.M. on the date of the accident, he was awakened by the "A.B." to prepare for a change of crew on the ship. The bunkroom where Lafont was sleeping was located in a separate room aft of the galley, and was separated from the galley by a door. In the galley on one wall was a sink over which was an open rack designed to hold bottles and other containers. Lafont had been suffering from a cold, and upon being awakened he immediately went to the galley to drink some apple juice. Apple juice had been contained in a bottle out of which Lafont had previously been drinking. Pine oil was contained in a bottle of the same color and similar size. Each bottle had a distinguishing label on it, and although Lafont could neither read nor write, he was able to tell one bottle from the other. Lafont claims that the open rack contained only drinkables and eatables, such as fruit juices, preserves and mustard. Lafont reached for a bottle on the rack, and, thinking that the bottle contained apple juice, he took a substantial swallow. In fact, the bottle contained pine oil, a liquid used for cleaning purposes and considered dangerous and possibly deadly for human consumption. Lafont claims that he sustained serious and permanent internal injuries as a result of consuming the pine oil.

Lafont's deposition and Cheramie's affidavit create a dispute as to whose acts resulted in the injuries sustained by Lafont. There is a question as to whether food items were kept on the rack over the sink.[2] Without further proceedings, it cannot be said that the pine oil was

---

1. 46 U.S.C.A. § 688.

2. The deposition reveals the following testimony:

"Q. Where was the apple juice kept?
"A. We usually—got a rack around the top of the food cabinet, you know, to hold the bottles, preserves—That's

usually kept in the food rack and not in the bathroom.[3]

■ Attached to Cheramie's affidavit was a photograph of the galley area of the boat. Vividly displayed is a bottle of pine oil in a rack above the wash basin. The defendants do not contend, nor can they, that this photograph, taken two years after the alleged accident, controverts Lafont's testimony concerning the use of the storage rack at the time of the accident. A trier of fact may be influenced by the similarity in appearance of the apple juice and pine oil bottles and might even be persuaded that a fellow employee was responsible for misplacing the pine oil on a rack reserved for food substances. It may have been reasonable for Lafont to assume that the bottle contained apple juice. On the other hand, he may have acted in a care-

less manner.[4] Of course, in Jones Act cases contributory negligence is not a complete defense.

■■ Under the Jones Act the test of a jury case is simply whether the proof justifies with reason the conclusion that the employer's negligence played any part, even the slightest, in producing the injury for which damages are sought. Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed. 2d 493; Vickers v. Tumey, 5 Cir. 1961, 290 F.2d 426, 429. Clearly, the district court erred in entering summary judgment for the defendants on the counts based upon negligence and upon unseaworthiness. The judgment is reversed and the cause remanded for a trial on the merits.

Reversed and remanded.

---

where the apple juice is supposed to be.
    *    *    *    *    *
"Q. Did they keep anything else in that rack?
"A. No, just what we use, like I told you, catsup, hot sauce, and some mayonnaise—some mustard, and apple juice."

3. On deposition, Lafont gave the following answer when asked where the pine oil was kept: "As far as I know, all the time it'd be in the bathroom, sir."

4. Lafont gave the following testimony:
"Q. You had been drinking out of this bottle, I take it, before this particular incident?
"A. Yes.
"Q. You had been drinking apple juice, anyway. What kind of a bottle was the pine oil in?
"A. About the same size bottle.
"Q. What color?
"A. The apple juice and the pine oil look to me about the same color.
"Q. Was the bottle the same shape?
"A. Yes, sir, the same size bottle.
"Q. Was it shaped the same?
"A. Yes, built about the same—same thing, to me.
"Q. Did the bottles have labels on them?
"A. Yes.
"Q. Are you able to read and write?
"A. No.

"Q. By looking at these two labels, could you tell the difference?
"A. Yes, I know the label on apple juice. I was reaching for that bottle because I was short of apple juice— and that's it.
"Q. Did you look at the label before you drank from the bottle?
"A. No, I just grabbed the bottle and opened it up and took a big swallow. I was half asleep and come in the galley half asleep and grabbed that and tried to check that motor.
"Q. When you grabbed that bottle in the galley, did you turn the light on in the galley?
"A. We have a light all the time—just a small light—not bright, because for the skipper we got to have that kind of a light, because it don't reflect through the window in front, see.
"Q. You don't have a better light you can turn on?
"A. No, that's the light we use all the time—leave it on. It's not bright.
"Q. Is it bright enough for you to see the labels on these bottles, if you look at it?
"A. Yes, I look at what I want—just never thought pine oil was going to be there—I'm short of apple juice— I just grabbed the bottle and take a swallow."