459 F.2d 631
 Lawrence F. CROOKS, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 25056.
 United States Court of Appeals,
Ninth Circuit.
 April 20, 1972.
 
 Howard J. Privett, Jack D. Fudge, of McCutchen, Black, Verleger & Shea, William Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., Lawrence F. Ledebur, Chief, Admiralty & Shipping Sect., Washington, D.C., for defendant-appellant.
 Margolis, McTernan, Smith, Scope & Herring, Los Angeles, Cal., for plaintiff-appellee.
 Allan Brotsky, of Garry, Dreyfus, McTernan & Brotsky, San Francisco, Cal., as amicus curiae for plaintiff-appellee.
 Before MERRILL, KILKENNY and TRASK, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 Appellee brought this action in admiralty against the United States, claiming damages for personal injuries resulting from negligence and unseaworthiness sustained by him in an accident which occurred aboard the SS Green Point, a public vessel owned by the United States. In the same action he also sought recovery for cost of maintenance during the period of his disability.
 
 
 2
 The District Court found negligence and unseaworthiness and awarded damages in the sum of $16,773.40, including past and future medical care and lost earnings. The award included maintenance in the sum of $1,200 (for 150 days at $8 a day) and prejudgment interest on the maintenance award in the sum of $120. These two items of damages are challenged by the Government's appeal. Appellee concedes that the interest award was in error. The sole dispute relates to the award of maintenance.
 
 
 3
 Historically, maintenance and cure arise from the obligation of the shipowner to care for the seaman taken ill or disabled during a voyage or during the course of his maritime employment.[1] Such obligation is not founded on or limited by concepts of negligence or unseaworthiness or injury in the course of employment.[2] It is an implied contractual obligation created by reason of the seaman's helpless dependence on his ship.[3]
 
 
 4
 It was originally regarded as consisting of three elements: medical attention; maintenance; and lost wages.[4] The obligation further was regarded as limited to the tenure of employmentusually the course of the voyage during which disability took place. It was felt that dependence of the seaman on his ship could hardly be said to extend beyond this period.[5]
 
 
 5
 So far as concerns the elements of maintenance and cure, this limitation no longer exists. While (absent an obligation founded on negligence or unseaworthiness) the obligation to provide wages terminates with the contract of employment, the obligation to provide maintenance and cure is now recognized as extending beyond that period.[6] First it was extended for a "reasonable" period, depending on the particular circum-stances of the case.[7] Then, by international convention, it was extended until cure (or the closest possible approach to cure) had been obtained. Farrell v. United States, 336 U.S. 511, 517, 69 S. Ct. 707, 93 L.Ed. 850 (1949). And see Stanovich v. Jurlin, 227 F.2d 245 (9th Cir. 1955).
 
 
 6
 At the outset maintenance was justified on the ground that lost wages alone would be inadequate compensation, since maritime wages were fixed in the contemplation that board and lodging would be supplied by the ship. Maintenance thus was regarded as a supplement to wages.[8]
 
 
 7
 With the maintenance obligation recognized as persisting beyond the tenure of employment, it was in effect severed from the wage obligation and attached to the obligation for cure. The shipowner must provide the cost of maintenance until maximal cure has been obtained, irrespective of the termination of his obligation to provide wages. Thus we find the obligation of maintenance enforced even where maritime compensation did not include board and lodging-where the seaman was expected to pay for his meals out of his wages. No matter what the terms of his maritime employment were, during the period of his disability he was entitled to be provided with maintenance as well as cure. He was not to be abandoned in destitution. The City of Avalon, 156 F.2d 500, 501 (9th Cir. 1946). To the same effect, Weiss v. Central Railroad Company of New Jersey, 235 F.2d 309, 311-313 (2d Cir. 1956); Williamson v. Western Pacific Dredging Corporation, 304 F.Supp. 509 (D.Ore. 1969).
 
 
 8
 The obligation of maintenance and cure has, however, traditionally been subject to the limitation that the seaman is not entitled to double recovery.[9] No matter what the basis of the shipowner's obligation, or on how many grounds it may be rested-contract, unseaworthiness, negligence-lost wages cannot be recovered more than once. Nor can the cost of maintenance or cure.[10]
 
 
 9
 Our case illustrates the problem of double recovery involved in the award of "maintenance" (on a maritime contract theory) and "lost wages" (on a negligence and unseaworthiness theory) during convalescence, where the lost wages are attributable to shore-side labor as well as ship-side labor.[11] The District Court divided the convalescence period of seven months into subperiods of one third and two thirds. Based on his past work history, which provided a probable index of future work patterns, the sailor received "ship-side" wages during the one-third span and "shore-side" wages during the two-thirds span. In addition, he was awarded a flat maintenance per diem for the entire term despite the fact that his wage award hypothesized a self-maintaining man on shore for a portion of such period.
 
 
 10
 The United States contends that since shore-side wages includes the element of maintenance (one employed ashore is expected to maintain himself and his wages are computed accordingly), an allowance of maintenance on top of shore-side wages amounts to double recovery.
 
 
 11
 Appellee contends that since the maintenance obligation exists independent of the wage obligation maintenance is due until cure has been obtained no matter how lost wages are computed.
 
 
 12
 Upon this precise issue we find no court of appeals case directly in point. The Eastern District of Louisiana has ruled squarely in favor of appellee. Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Authority, 284 F.Supp. 709 (1968); Hudspeth v. Atlantic & Gulf Stevedores, Inc., 266 F.Supp. 937 (1967); Creppel v. J. W. Banta Towing, Inc., 202 F.Supp. 508 (1962). The Southern District of New York has ruled the other way. Wright v. Cion Corp. Peruna Desvaspores, 171 F.Supp. 735 (1959). Other cases suggesting support for the position of the United States include Gooden v. Sinclair Refining Co., 378 F.2d 576 (3d Cir. 1967); Muise v. Abbott, 160 F.2d 590 (1st Cir. 1947); Bartholomew v. Universe Tankships, Inc., 279 F.2d 911 (2d Cir. 1960).
 
 
 13
 The position of the United States has logic on its side. It can hardly be denied that double recovery results from allowing both shore-side wages and maintenance and that here the injured seaman is more than made whole.
 
 
 14
 The double recovery rule, however, is not without exception. In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), maintenance was allowed for a period during which the seaman was actually employed ashore, the Court reasoning that otherwise the employer, by delaying the payment of maintenance, could gain an unconscionable advantage. The Court stated:
 
 
 15
 "We noted in Aguilar v. Standard Oil Co., 318 U.S. 724, 730, [63 S.Ct. 930, 933, 87 L.Ed. 1107,] that the shipowner's liability for maintenance and cure was among 'the most pervasive' of all and that it was not to be defeated by restrictive distinctions nor 'narrowly confined."'[12]
 
 
 16
 Justice Stewart (dissenting on other grounds), noted:
 
 
 17
 "The adequate protection of an injured or ill seaman against suffering and want requires more than the assurance that he will receive payments at some time in the indefinite future. Payments must be promptly made, at a time contemporaneous to the illness or injury. And for this reason the maintenance remedy should be kept simple, uncluttered by fine distinctions which breed litigation, with its attendant delays and expenses." 369 U.S. at 537-538, 82 S.Ct. at 1003.[13]
 
 
 18
 On the basis of such considerations and in line with this court's holding in The City of Avalon, 156 F.2d 500 (9th Cir. 1946), supra, we hold that award of maintenance here was proper.
 
 
 19
 To make recovery of maintenance contingent upon the nature of the wage award that has been or may be secured would, in our view, serve to discourage voluntary and contemporary payment of maintenance since the extent of the obligation cannot be definitely ascertained or may be debatable. The better rule, in our judgment, is that the maintenance obligation is independent of that to compensate for lost wages and exists without regard to the fact that lost wages may be computed on the basis of employment ashore.
 
 
 20
 We conclude that save for the award of prejudgment interest, the judgment should be affirmed. Accordingly judgment is modified by deducting therefrom the sum of $120. Costs are awarded to appellee.
 
 TRASK, Circuit Judge (dissenting):
 
 21
 I respectfully disagree upon the ground that the award of maintenance amounts to double recovery. Vickers v. Tumey, 290 F.2d 426, 434-435 (5th Cir. 1961).
 
 
 
 [1]
 See, generally, Vaughan v. Atkinson, 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); Aguilar v. Standard Oil Co., 318 U.S. 724, 725-730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527-528, 58 S.Ct. 651, 82 L.Ed. 993 (1938); and Harden v. Gordon, 11 Fed.Cas. 480 (No. 6,047) (C.C.D.Me.1823) (Per Justice Story)
 
 
 [2]
 Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527-528, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Aguilar v. Standard Oil Co., 318 U.S. 724, 725-730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943)
 
 
 [3]
 Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). Maintenance and cure differs from obligations normally classified as contractual. The obligation is imposed by the law itself; it arises out of the seaman's relationship to his vessel. Thus, though stemming from the employment contract, it is quasi-contractual in nature. Vaughan v. Atkinson, 369 U.S. 527, 532-533, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962)
 
 
 [4]
 Pacific Steamship Co. v. Peterson, 278 U. S. 130, 134-139, 49 S.Ct. 75, 73 L.Ed. 220 (1928); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 382, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). And see, Gilmore and Black, The Law of Admiralty, Ch. VI, Secs. 6-10, 6-11, 6-12
 
 
 [5]
 The question whether maintenance could transcend the time limit of the voyage was left open in The Osceola, 189 U.S. 158, 173, 175, 23 S.Ct. 483, 47 L.Ed. 760 (1903). See also, Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 82 L.Ed. 993 (1938)
 
 
 [6]
 Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 529, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 379-380, 38 S.Ct. 501, 62 L.Ed. 1171 (1918)
 
 
 [7]
 Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 529, 58 S.Ct. 651, 82 L.Ed. 993 (1938). And see, The Bouker No. 2, 241 F. 831, 833-834 (2d Cir. 1917)
 
 
 [8]
 Pacific Steamship Co. v. Peterson, 278 U. S. 130, 137, 49 S.Ct. 75, 73 L.Ed. 220 (1928); Harden v. Gordon, 11 Fed.Cas. 480, 481 (No. 6,047) (C.C.D.Me.1823) (Per Justice Story); Smith v. Lykes Brothers-Ripley S.S. Co., 105 F.2d 604, 605 (5th Cir. 1939)
 
 
 [9]
 See, e.g., McCarthy v. American Eastern Corp., 175 F.2d 727, 729 (3d Cir. 1949); Yates v. Dann, 223 F.2d 64, 67 (3d Cir. 1955); Smith v. Lykes Brothers-Ripley S.S. Co., 105 F.2d 604, 606 (5th Cir. 1939); Vickers v. Tumey, 290 F.2d 426, 435 (5th Cir. 1961)
 
 
 [10]
 See Gilmore and Black, The Law of Admiralty, Ch. VI, Sec. 6-9
 
 
 [11]
 The parties agree that an award of maintenance in addition to lost wages, where lost wages are attributable solely to ship-side labor, would not amount to double recovery. Here, the seaman would receive for the period in question no more than bed and board and the relatively limited maritime pay appropriate to a life in which bed and board are provided free of charge
 
 
 [12]
 369 U.S. 531-532, 82 S.Ct. at 1000. The Court observed in addition that Admiralty out of historic solicitude for the welfare of its wards construes liberally "all doubts and ambiguities" in favor of maintenance awards. Id. See also, Warren v. United States, 340 U.S. 523, 530, 71 S.Ct. 432, 95 L.Ed. 503 (1951). This rule of interpretation is of assistance in the case before us
 
 
 [13]
 Thus Justice Stewart agreed with the majority that "countervailing policies" may require a limited departure from the general damages mandate: "make the seaman whole," in the interests of preserving a simple and expeditious maintenance remedy