**John D. ADDISON, Plaintiff-Appellant,**

v.

**GULF COAST CONTRACTING SERVICES, INC. and Texaco, Inc., Defendants-Appellees.**

**No. 84–4131**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1984.

Samuel E. Farris, Hattiesburg, Miss., for plaintiff-appellant.

Edward J. Koehl, Jr., New Orleans, La., Charles A. Schutte, Jr., Baton Rouge, La., John L. Low, IV, Jackson, Miss., Bryant & Stennis, Gulfport, Miss., James O. Dukes, Monroe & Lemann, Nigel E. Rafferty, New Orleans, La., for defendants-appellees.

Before WILLIAMS, JOLLY, and HILL, Circuit Judges.

ROBERT M. HILL, Circuit Judge:

The plaintiff, John D. Addison, filed this action under the provisions of the Jones Act, 46 U.S.C. § 688, and the general maritime laws of the United States seeking damages from Gulf Coast Contracting, Inc. (Gulf Coast) and Texaco, Inc. (Texaco) for an injury he suffered while employed as a

roustabout on a fixed tank battery platform located at Garden Island Bay, Louisiana. After a trial on the merits, the district court, sitting without a jury, found that Addison lacked seaman status under the Jones Act, that neither Gulf Coast nor Texaco was negligent with respect to the activities that resulted in Addison's injury, and that the barge servicing the tank battery was not unseaworthy. From the district court's entry of judgment against him, Addison appeals to this Court.

Addison urges that this action was improperly removed from the state court; that he was entitled to a trial by jury; and that the court below erred in its findings on seaman status, defendants' negligence and the unseaworthiness of a barge owned by Texaco. After carefully reviewing Addison's complaints, we find this action was not properly removed pursuant to 28 U.S.C. § 1441(c). Accordingly, we reverse the judgment of the district court and remand with directions to vacate the judgment in favor of appellees and remand the action to state court.[1]

### I.  *Procedural Background*

On September 29, 1977, Addison instituted this action in Mississippi state court against his employer, Gulf Coast. The action was brought under the Jones Act and general maritime law. Gulf Coast denied liability and also denied Addison's status as a seaman under the Act. Addison then filed an amended bill of complaint in the state court adding Texaco as a party defendant. Addison asserted that he worked aboard a barge owned by Texaco under the control, direction and supervision of Texaco. He also alleged that Texaco was liable for negligence and unseaworthiness under the Jones Act and general maritime law. Addison's amended bill of complaint also was general enough to state a claim for maintenance and cure.

Based upon complete diversity between the plaintiff Addison and the defendants Texaco and Gulf Coast, Texaco removed the state court action to the United States District Court for the Southern District of Mississippi pursuant to 28 U.S.C. § 1441(c). Addison's first motion to remand was denied by the district court. Apparently the district court allowed removal because it found the maintenance and cure claim separate and independent from the Jones Act claim thereby satisfying the requirements for removal pursuant to § 1441(c). In an apparent attempt to obtain remand, Addison waived his claim to maintenance and cure, particularly as to Texaco, and then filed his second motion to remand to state court. This motion was also denied.

On April 5, 1982, this action went to trial and on January 26, 1984, the district court entered judgment against Addison giving rise to this appeal.

### II.  *Facts* [2]

For a number of years prior to the date of this accident, May 28, 1977, Texaco had operated its tank battery No. 49 among its facilities at Garden Island Bay within the coastal marsh of Louisiana near the mouth of the Mississippi River. Tank battery No. 49, which served as a collection and storage facility for petroleum products produced by oil wells in the vicinity, was located on a fixed platform which was supported by pilings driven into the earth. Over the years these pilings had gradually sunk until by 1977 the platform was barely above the water level at high tide. Texaco concluded that it was necessary to rebuild and elevate tank battery No. 49, but since the field and battery were required to remain in production during the time of the reconstruction, it was determined that the facility and equipment should be torn down and rebuilt in sections, one section at a time.

---

**1.** In light of our disposition of this action on the issue of its removability, we do not reach the other issues raised on this appeal.

**2.** The facts set out in this opinion are excerpted from the findings of fact entered by the district judge. Much of the dispute in the court below was over the existence of certain facts and their

proper interpretation; that dispute continues in this forum. As an initial matter, we have reviewed the district court's findings of fact and find them not to be clearly erroneous. Therefore, we repeat with confidence those that are relevant here.

Texaco hired several contractors to perform the actual work of reconstructing the tank battery. Dill Construction Company (Dill) was employed to provide a pile driver/crane and a crew to operate its equipment. This equipment consisted of a crane which could be used to move the concrete platform bases, pilings, tanks, heavy pipe and other equipment. Dill also provided leads which could be attached to the crane to allow it to be used as a pile driver to drive the pilings of the new platform after removing the old pilings. Lafitte Welding Company (Lafitte) was hired to fabricate pipe for the new tanks and to provide the services of a welder and a welder's helper. The majority of Lafitte's welding work was performed aboard a welding barge, Texaco Barge No. 102, adjacent to the tank battery, since oil and gas fumes on the tank battery platform made welding there hazardous. Gulf Coast was hired to provide roustabouts, or laborers, to do the physical work associated with tearing down and rebuilding the sections of the tank battery. At the time of Addison's accident, Gulf Coast was rotating two roustabout crews, each normally consisting of a foreman, or pusher, and four or five roustabouts. Each of these crews worked seven days on and seven days off.

On the date of the accident in question, Addison was a roustabout in the Gulf Coast crew. The pusher, at that time was Charles McRaney. This roustabout crew was assigned by Texaco to tank battery No. 49 for the purposes of dismantling and rebuilding the tank battery. It appears that Addison only briefly participated in the dismantling of the old sections of the tank battery; during his three or four tours of duty at tank battery No. 49, Addison's work was associated primarily with rebuilding sections of the tank battery. Although the crew's assignment at times required roustabouts to go aboard the adjacent Texaco welding barge, the Gulf Coast roustabouts, including Addison, were never assigned to the welding barge nor did they perform a substantial part of their work aboard said vessel.

The vast majority of the work performed by the Gulf Coast roustabouts was done aboard the tank battery platform. This work consisted of moving into place both pipe fabricated by the welders and "screw pipe," which had threads rather than flanges on the ends and required no fabrication by the welder. Approximately fifty percent or more of the pipe utilized in rebuilding the tank battery was screw pipe which would have been handled by the roustabout crew without ever going aboard the welding barge. In addition to positioning this pipe into place, the roustabouts spent a considerable amount of time bolting pipe flanges, threading screw pipe, making all other connections to piping and tanks on the platform, painting the pipes, cleaning up the platform and doing other tasks necessary to the construction of tank battery No. 49. All of these tasks were performed on the tank battery platform itself. The roustabout crew occasionally boarded the welding barge in the course of their duties, spending approximately 10 percent or less of their time aboard the welding barge.

The roustabouts' only duties aboard the welding barge were moving fabricated pipe from the barge to the tank battery platform and occasionally assisting the welder in moving sections of pipe from the pipe racks on the barge to the welders pipe jacks also on the barge. Addison and other members of the roustabout crew did go aboard the welding barge to eat lunch which was prepared at the Texaco camp and brought out to the barge. Their lunch was available aboard the barge solely as a matter of convenience and the roustabouts performed no functions aboard the barge at that time. On occasions when the barge was moved to or from its position adjacent to the tank battery platform, roustabouts such as Addison may have performed the incidental function of tying or untying the barge. Neither Addison nor any other of the roustabouts performed the duties of welder or welder's helper aboard the Texaco welding barge.

On the evening prior to Addison's accident a pipe had been fabricated aboard the welding barge which was to be moved into

place for connection to a tank on the northeast corner of the tank battery platform. On the morning of the accident, the pipe was manually lifted and carried by five workers, including Addison, to the platform. In the course of moving the pipe and while aboard the tank battery platform, Addison stepped onto another pipe already in place on the deck of the platform causing him to shoulder more than his proportionate share of the pipe weight. Shortly thereafter Addison complained of a back injury and was sent in for medical treatment.

The longest flanged pipe which was installed in the area of the platform where Addison was working at the time of his injury was approximately 26 to 28 feet in length. This four inch, schedule 40, section of pipe with three flanges weighed approximately 350 pounds. At the time of Addison's alleged injury, this section of pipe was being carried by five able-bodied men. The manner of handling the pipe was in the normal, customary and acceptable manner for work of this type.

### III. *Removal*

Removal of this action from the state court is predicated upon 28 U.S.C. § 1441(c) which permits removal of an entire case "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action." As stated, the district court denied Addison's motion for remand because his amended state court complaint included a removable maintenance and cure claim and the complaint alleged the requisite diversity of citizenship and amount in controversy. 28 U.S.C. § 1441(a). The district court did not, however, specifically find that Addison's amended complaint asserted a Jones Act claim against Texaco. Addison argues that he did assert a Jones Act claim in state court against Texaco, which he had a right to have litigated in that forum.[3] Texaco

and Gulf Coast, however, urge that even if Addison asserted a Jones Act claim, his maintenance and cure claim is "separate and independent" of that claim, and, therefore, § 1441(c) allows the removal of this action to a federal forum. Because our determination of the propriety of removing this action depends, first, upon whether a Jones Act claim was asserted and, second, whether that claim is separate and independent from the maintenance and cure claim, we initially address the Jones Act issue.

### A. Assertion of Jones Act Claim

In determining whether a Jones Act claim has been alleged, we are limited to a review of the plaintiff's pleadings. *Preston v. Grant Advertising, Inc.*, 375 F.2d 439 (5th Cir.1967). Accordingly, an analysis of Addison's state court amended complaint is most pertinent to the propriety of Texaco's removal. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951). Addison's amended complaint asserts that Texaco is indebted to him on a claim "having arisen pursuant to Title 46, section 688, of the United States Code." This conclusory assertion presumably invokes the Jones Act; however, remand is not required where the complaint failed to allege sufficient facts to support a cause of action under the Jones Act. *Preston v. Grant Advertising, Inc., supra* 375 F.2d at 440. Gulf Coast properly points out that an employer-employee relationship is a necessary element of a true Jones Act claim. *Volyrakis v. M/V ISABELLE*, 668 F.2d 863 (5th Cir.1982); *Rohde v. Southeastern Drilling Co., Inc.*, 667 F.2d 1215 (5th Cir. 1982). Therefore, Addison was required to allege an employer-employee relationship with Texaco in order to properly assert a claim under the Jones Act. Gulf Coast's reading of Addison's amended complaint does not find any allegation that Addison was Texaco's employee. We disagree.

While Addison does refer to himself as an employee of Gulf Coast, his pleadings

---

3. Addison is correct in this respect. Congress has explicitly prohibited removal of Jones Act claims. 28 U.S.C. § 1445(a) (1982); 46 U.S.C.

§ 688 (1976) (making statutes modifying remedies of railway employees applicable to seamen).

fail to specifically refer to his relationship with Texaco as employee-employer. Our review of Addison's pleadings, however, is not so cursory. We note that Addison repeatedly alleged that he performed his duties under the direct supervision, management, direction and control of Gulf Coast *and* Texaco. The law is well settled that an injured worker may prove that he was a borrowed servant at the time of his injury by establishing that the defendant against whom recovery is sought had the power to control, manage and direct the servant in the performance of his work. *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 178 (5th Cir.1981), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982); *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir.1975). By alleging the degree to which Texaco maintained supervision and control over him in the performance of his duties, Addison has properly alleged the requisite facts to establish an employment relationship with Texaco. Accordingly, we find that Addison has alleged sufficient facts to establish a claim under the Jones Act against Texaco.

### B. Waiver of Maintenance and Cure Claim.

■■■ The district court premised removal upon Addison's claim for maintenance and cure. Addison, apparently, presumes that waiver of his maintenance and cure claim prior to his second motion to remand, but after the district court denied his first motion to remand, limits this Court to reviewing the removability of only his Jones Act claim. *See, supra* note 3. Whether subject matter jurisdiction exists, however, is not to be determined at the time of Addison's motion to remand; rather, we are to look to Addison's complaint as it existed at the time the petition for removal was filed. *Coleman v. Louisville Pants Corp.*, 691 F.2d 762 (5th Cir.1982); *In Re Carter*, 618 F.2d 1093, 1101 (1980), *cert. denied sub nom. Sheet Metal Workers v. Carter*, 450 U.S. 949, 101 S.Ct. 1410,

67 L.Ed.2d 378 (1981). Our review indicates that Addison's amended complaint, at the time of removal, did assert a claim for maintenance and cure. Therefore, his later waiver of this claim is of no consequence in resolving the issue of removability.

### C. Removability of Maintenance and Cure Claim.

A more difficult question for our consideration is whether a Jones Act claim and a maintenance and cure claim are "separate and independent" for purposes of § 1441(c) removal. While this Court has not directly addressed this issue, we find support in the Second Circuit's decision in *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2nd Cir.1984), for the position that a "maintenance and cure claim is not sufficiently distinct from a Jones Act claim arising out of the same set of operative facts to warrant removal." *Id.* at 1026. This issue has also been addressed by three district courts, all of which have rejected removal. *Stokes v. Victory Carriers, Inc.*, 577 F.Supp. 9 (E.D.Pa.1983); *Skaw v. Lady Pacific, Inc.*, 577 F.Supp. 2 (D.Alaska 1983); *Sawyer v. Federal Barge Lines, Inc.*, 577 F.Supp. 37 (S.D.Ill.1982) (vacating an earlier ruling, 510 F.Supp. 39, to the contrary).

In *Pate v. Standard Dredging Corp.*, 193 F.2d 498 (5th Cir.1952), we held that where there is but a single wrongful invasion of a single primary right, a claim for unseaworthiness joined with a claim under the Jones Act is not a separate and independent claim for the purposes of removal. *Id.* at 501. In *Pate* we did not address the removability issue with regard to appellant's claim for maintenance and cure because the maintenance claim failed to satisfy the requisite jurisdictional amount to be removable.[4] Texaco asserts that, unlike the plaintiff in *Pate*, Addison is seeking relief for the alleged invasion of two separate rights: contractual rights under maintenance and cure and rights founded in tort under the Jones Act. For support, Texaco

---

4. Nor did we assume, as Judge Friendly's plurality opinion in *Fitzgerald v. United States Lines Co.*, 306 F.2d 461 (2d Cir.1962), *rev'd on other* grounds, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), indicates, that the two claims are separate and distinct. *Id.* at 472.

cites Professors Gilmore and Black: "By unquestionable authority a maintenance and cure claim is 'separate and independent' from ... the Jones Act ... for the purposes of *res judicata* or § 1441(c) or anything else." G. Gilmore and C. Black, *The Law of Admiralty*, § 6–28 at 358 (2d ed. 1975) (emphasis in original).[5] The authors, however, go on to make clear that the cases to date have assumed that, notwithstanding a claim for maintenance and cure, the assertion of a Jones Act claim prevents removal of the entire action. *Id.*

■ Texaco correctly points out that Jones Act negligence and maintenance and cure are based on different legal theories, and that the damages recoverable under each are different; as a result, it argues the two claims are separate and independent. While these distinctions are not insignificant, we are directed in this area to the guidelines established in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *Finn*, the Supreme Court held "that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocking series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14, 71 S.Ct. at 540. To determine if there is a single wrong, the court must examine whether or not there was "wrongful invasion of a single *primary* right of the plaintiff," not how many different legal causes of action are alleged. *Id.* at 13, 71 S.Ct. at 540 (quoting *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927)). If all damages come "from a single incident" or all claims involve "substantially the same facts" invasion of a single, primary right is indicated. *Id.* 341 U.S. at 16, 71 S.Ct. at 541.

■ Addison has received only one injury; the only relief he seeks is compensation for that particular injury. His injury arose from a singular occurrence; moreover, both his maintenance and cure and Jones Act claims involve substantially the same facts. While it is true that maintenance and cure and Jones Act claims have been held independent actions for some purposes, *see, e.g., Pacific Steamship Co. v. Peterson*, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928) (election of remedies); *Crooks v. United States*, 459 F.2d 631 (9th Cir.1972) (no double recovery), they have also been held closely related for other purposes. *See Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) (submission to jury).[6]

Our holding today that maintenance and cure claims are not "separate and independent" from Jones Act claims for § 1441(c) removal purposes is bolstered by four additional considerations. First, § 1441(c) requires that a removable claim must be both "separate" and "independent" from a nonremovable claim. In 1948, Congress' addition of the word "independent" gave emphasis to its intention to require fairly complete disassociation between the claims. *See American Fire & Casualty Co. v. Finn, supra*, 341 U.S. at 12, 71 S.Ct. at 539. Notwithstanding the different legal theories underlying the Jones Act and maintenance and cure, we find that the claims in this case are not sufficiently disassociated from each other; rather, they are closely associated. *See Fitzgerald v. United States Lines Co., supra*, 374 U.S. at 18, 19 n. 6, 21, 83 S.Ct. at 1649 n. 6, 1650; *cf. Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 322, 47 S.Ct. 600, 603, 71 L.Ed. 1069 (1927) (maintenance and cure

---

5. The authors' only citation of "unquestionable authority" is *Pacific Steamship Co. v. Peterson*, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928) (maintenance and cure and Jones Act claims are distinct for purposes of election of remedies).

6. The Supreme Court noted the practical relationship between the two claims:
Although remedies for negligence, unseaworthiness, and maintenance and cure have different origins and may on occasion call for application of slightly different principles and procedures, they nevertheless, when based on one unitary set of circumstances, serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery.
374 U.S. at 18, 83 S.Ct. at 1649.

claim is "purely dependent and contingent" on negligence action). Moreover, injured seamen have traditionally joined their negligence, unseaworthiness, and maintenance and cure actions in a single three-count lawsuit. *See, e.g.,* Gilmore & Black, *supra,* § 6–25 at 349. This traditional and historic pattern of joinder is some evidence of the dependent rather than independent relationship between these two claims.

 Second, Congress intended that seamen have the choice of a state court or federal court forum in Jones Act cases. *See* 28 U.S.C. §§ 1333(1), 1445(a) *Gilmore & Black, supra,* § 6–28 at 357. In addition, the Jones Act and claims thereunder should be liberally construed in favor of injured seamen. *Cortes v. Baltimore Insular Line,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); *see* Norris, *The Law of Seamen* § 662 (1970). Removal by virtue of the maintenance and cure claim, however, would seriously limit a seaman's right to elect his forum. To prevent removal, an injured seaman "would be forced to bring maintenance and cure as a separate action or forego maintenance and cure damages above $10,000." *Skaw v. Lady Pacific, Inc., supra,* 577 F.Supp. at 4.

Third, "voluntary and contemporary payment of maintenance and [cure]" is highly encouraged to ensure that payments will be made to injured seamen when needed most. *Crooks v. United States,* 459 F.2d 631, 635 (9th Cir.1972). Allowing removal in this context will encourage Jones Act defendants to dispute and withhold payment on maintenance and cure claims to ensure removability of actions of this nature.

Finally, we note that here, unlike a typical § 1441(c) case where a removable claim is joined with a claim which lacks federal jurisdiction, "the removable claim is joined with a federal claim that Congress prefers to leave in state court if that is where a plaintiff has filed it." *Gonsalves v. Amoco Shipping Co., supra,* 733 F.2d at 1022. We think this preference in favor of Jones Act plaintiffs lends support to our holding, particularly where, as here, the two claims are historically and factually tied together.

### IV. *Conclusion*

We are not unmindful that some claims joined with a Jones Act claim may be sufficiently "separate" and "independent" to warrant removal. In light of the foregoing, however, the joined claims must necessarily exhibit an independence beyond that demonstrated here for the Jones Act claim to be removable. Because we find Addison's maintenance and cure claim not sufficiently independent of his Jones Act claim, we reverse the judgment of the district court and remand with directions to vacate the judgment in favor of the appellees and remand the action to the state court.

REVERSED AND REMANDED.