**Harold D. CROWE Plaintiff**

v.

**DEUTSCH BANK Alex Brown and Harris R. Lydon, Jr. Defendants**

**No. CIV.A. 4:03CV405LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

June 29, 2004.

John J. Morse, Meridian, MS, for Plaintiff.

Charles Louis McBride, Jr., Robert Richard Cirilli, Jr., Brunini, Grantham, Grower & Hewes, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiff Harold D. Crowe's motion to remand. Defendants Deutsch Bank Alex.Brown (DB Alex.Brown) and Harris R. Lydon, Jr. have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff Crowe brought this action in the Circuit Court of Lauderdale County, Mississippi against DB Alex.Brown and Harris R. Lydon, Jr. asserting various state and federal claims relating to defendants' "course of dealing regarding investments" in a securities account maintained

by them for plaintiff. According to the complaint, plaintiff maintained an account with DB Alex.Brown, who employed Harris Lydon as an investment representative. The complaint alleges that over a period of time, between 1999 and late 2001, Lydon, without having been given discretionary authority and without plaintiff's express authorization, "embarked upon an extremely speculative course of investing in untried and unproven companies traded over-the-counter and in which Defendant Alex.Brown made markets." Plaintiff alleges that as the year 2001 progressed, Lydon placed buy and sell trades in initial public offerings in plaintiff's account, buying and selling within a short period of time, securities as to which the market had been manipulated by deceptive practices by the securities' underwriters, including DB Alex.Brown.

Among other things, Crowe alleges in his complaint that

> certain securities underwriters (including the Defendant DB Alex.Brown) conspired to engage in a course of conduct in which, *inter alia,* in return for allowing favored investors to receive allocations in underpriced IPOs of securities, those favored investors promised, or were coerced, to purchase shares on the aftermarket, often at escalating prices, a scheme sometimes referred to as "laddering."

The complaint elaborates on this allegation, stating,

> [T]he conspiring underwriters, including on information and belief Defendant DB Alex. Brown, schemed to earn additional profits by requiring their favored clients (those allocated large portions of IPOs) to engage in substantial trading in other securities in order to generate commissions for the brokerage firms.

The complaint goes on to charge that Crowe was an innocent victim of such schemes, and alleges, in particular, that

DB Alex.Brown was involved in the underwriting of certain securities, including the securities of Covad Communications Group, Extensity, Intersil Corp. Class A., Lante Corp. and Register.Com, and that in connection with the IPOs of these companies, it participated in a scheme to enrich itself through the manipulation of the aftermarket trading in these companies' common stock. Although the factual allegations, when coupled with the charging counts of the complaint, insinuate that DB Alex.Brown was involved in the underwriting of the securities of Covad, Intersil, Lante and Register.com, and that it bore some responsibility for the Registration Statements/Prospectuses of those companies, the allegations to that effect are explicit with reference to the securities of one company, Extensity. That is, plaintiff charges that DB Alex.Brown created artificial demand for Extensity stock by conditioning share allocations in the IPO upon the requirement that customers agree to purchase shares of Extensity in the aftermarket and, in some instances, to make those purchases at pre-arranged, escalating prices ("Tie-in Agreements"), and that in connection with the IPO, Extensity filed with the SEC a Registration Statement/Prospectus that

> was materially false and misleading in that it failed to disclose; among other things . . . , that the underwriters (including DB Alex.Brown) had required Tie-in Agreements in allocating shares in the IPO and would receive Undisclosed Compensation in connection with the IPO.

· · · · ·

> The Registration Statement/Prospectus was materially false and misleading in that in order to receive share allocations from the Underwriter Defendants in the Extensity IPO, customers were required to pay an amount in excess of

the IPO price set forth on the cover page in the form of Undisclosed Compensation and/or Tie-in Agreements.

.    .    .    .    .

The failure to disclose the Underwriter Defendants' unlawful profit-sharing arrangement... renders the Registration Statement/Prospectus materially false and misleading.

.    .    .    .    .

The Registration Statement/Prospectus was materially false and misleading due to its failure to disclose the material fact that the Underwriter Defendants were charging customers commissions that were unfair, unreasonable, and excessive as consideration for receiving allocations of shares in the IPO...

After recounting all these alleged facts, plaintiff charges in Count Two of his complaint that defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, in that,

in the course of selling, offering to sell, and purchasing securities, directly or indirectly, by the use of instrumentalities of interstate commerce . . . used or employed manipulative or deceptive devices in contravention of the rules of the United States Securities and Exchange Commission . . .

Count Three, which charges a violation of the 1933 Securities Exchange Act of 1933, 42 Stat. 82., 15 U.S.C. §§ 77a–77zz, recites that it is brought "with regard to Defendants' recommendations and purchases of the sales of the common stocks of Covad, Extensity, Intersil, Lante and Register.com," and charges that

The Registration Statements of [these companies'] securities, when they became effective, contained untrue statements of material fact and omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

Turning, then, to the question of removability, a case is generally removable if it raises a claim within the court's federal question jurisdiction, 28 U.S.C. § 1331, as does plaintiff's claim against defendants under the Securities Exchange Act of 1934. *See* 28 U.S.C. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court . . . ."); 15 U.S.C. § 78aa (conferring exclusive federal jurisdiction over claims brought under the 1934 Act). Here, however, in addition to his claim under the 1934 Act, plaintiff's complaint also includes a claim under against DB Alex.Brown under the 1933 Securities Act, and that Act includes an anti-removal provision:

Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. 77v(a). The fact, then, that plaintiff's complaint includes both removable and non-removable claims brings into play 28 U.S.C. § 1441(c), which states, in pertinent part, that

[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

A case is removable, therefore, whenever a "separate and independent claim or cause of action" that is based on federal question jurisdiction is "joined with one or more otherwise non-removable claims or causes of action." Thus, the parties herein agree that the determinative issue on the present

motion is whether plaintiff's claim under the 1934 Securities Act, which would be removable as presenting a federal question if it had been sued upon alone, is "separate and independent" from plaintiff's claim under the 1933 Securities Act, for if it is "separate and independent," the court may exercise jurisdiction over the entire case, including all state law claims, pursuant to 28 U.S.C. § 1441(c),[1] and if it is not, then the case must be remanded. *See Shorty v. Top Rank of Louisiana, Inc.*, 876 F.Supp. 838, 840 (E.D.La.1995) (stating that "[w]hile it is true that under 28 U.S.C. § 1441(c) an entire case may be removed where a separate and independent claim conferring federal question jurisdiction is joined with a non-removable claim, removal under that statute was not authorized" under the facts presented because the plaintiffs' 1934 Securities Act claim was not separate and independent from their Securities 1933 Act claim, as both involved a single wrong to the plaintiffs).

In this case, a review of the plaintiff's complaint, and of authorities concerning

the meaning of "separate and independent" under § 1441(c), persuades the court that the 1934 Act claim is not "separate and independent" from plaintiff's 1933 Act claim within the contemplation of § 1441(c) and that the case is therefore due to be remanded.

Section 11 of the 1933 Act, which forms the basis of plaintiff's count two, states:

(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue....

15 U.S.C. § 77k(a).[2]

Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), makes it unlawful

To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device

---

1. In addition to his claims under the 1933 and 1934 Securities Acts, plaintiff has asserted a number of state law claims, including claims for misrepresentation and omission under Miss.Code Ann. § 75–71–17, excessive trading and undue concentration in violation of Miss.Code Ann. § 8–6–19, unauthorized trading, common law fraud, breach of fiduciary duty and negligence.

2. In *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 861–62 (5th Cir.2003), the Fifth Circuit summarized the focus of the pertinent provisions of the 1933 Act, stating,

Generally speaking, the Securities Act of 1933 ... is concerned with the initial distribution of securities... Section 11 applies to registered securities and imposes civil liability on various persons when the registration statement is materially misleading or defective. *See* 15 U.S.C. § 77k. It permits a securities purchaser to recover damages against, among others, signatories to a registration statement and directors of the issuer, if the registration statement "con-

tained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(a).

Section 12 permits a purchaser to rescind a securities sale, whether or not the security is registered, if it is sold by means of a material misstatement. *See* 15 U.S.C. § 77l. The purchaser may recover against his immediate seller, if the seller offered or sold the security

by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not now, and in the exercise of reasonable care could not have known of such untruth or omission.

15 U.S.C. § 77l(a)(2).

or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

And Rule 10b–5, the basis of plaintiff's count three, which is "similarly—although not identically—focused (as the 1933 Act),"[3] provides as follows:

It shall be unlawful for any person, directly or indirectly . . .

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

In the case at bar, plaintiff's claim under the 1934 Act is premised on an alleged scheme to defraud Crowe by various acts relating to a number of specific securities bought and sold on plaintiff's account by DB Alex.Brown employee Harris Lydon. Although it appears from the complaint that plaintiff's claim under the 1934 Act may encompass more conduct than does his 1933 Act claim, the alleged misconduct which forms the basis of the 1933 Act claim—alleged misrepresentations in the Registration Statement/Prospectus of Extensity and other specified companies, falls well within the parameters of the alleged scheme or "course of conduct" to defraud that is the subject of the 1934 Act claim. In the court's opinion, given the fact that the 1934 Act claim is based, at least in part, on the same facts that form the basis of the 1933 Act claim, the 1934 Act claim cannot fairly be said to be "separate and independent" from the 1933 Act claim.

■ The explanation of the concept of "separate and independent" that is most often cited comes from the Supreme Court's decision in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951), wherein the Court stated, "[W]here there is a single wrong to [the] plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441." The Fifth Circuit has elaborated on this principle, observing in *Smith v. Amedisys Inc.*, 298 F.3d 434, 439–40 (5th Cir.2002), that,

"A case involving the violation of a single primary right or wherein a party seeks redress for one legal wrong cannot contain separate and independent claims, despite multiple theories of liability against multiple defendants." *Texas v. Walker*, 142 F.3d 813, 817 (5th Cir. 1998). Moreover, "[w]e have held that a claim is not independent if it involves substantially the same facts." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir.1996) (quoting *Addison v. Gulf Coast Contracting Servs.*, 744 F.2d 494, 500 (5th Cir.1984)) (internal quotations omitted).

Stated another way, the test for federal jurisdiction over an otherwise nonremovable separate and independent claim is "whether the nonremovable claim arises from the same 'underlying occurrences,' 'transactions,' or 'nucleus of operative facts' as do the removable claims." *Vons Companies, Inc., for Use and Ben. of*

---

3. *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 201 (5th Cir.1988).

*McCrory Acquisition Corp. v. Household Intern., Inc.,* 1990 WL 145007, *6 (S.D.N.Y.1990). *See also Snow v. Powell,* 189 F.2d 172, 174 (10th Cir.1951) (observing that "the word 'separate' means distinct; apart from; not united or associated. The word 'independent' means not resting on something else for support; self-sustaining; not contingent or conditioned."); *Aronov Realty Co., Inc. v. Title Ins. Co. of Minnesota,* 730 F.Supp. 406, 408–09 (M.D.Fla.1989) (observing that "[l]ower courts, applying the *Finn* Court's interpretation of § 1441(c), have developed an extremely restrictive approach, looking to the specific facts of the case before them to determine whether there was but one injury to the plaintiff, or whether multiple claims were dependent upon each other.").

The gravamen of both the 1933 and 1934 Securities Act claims in the complaint at bar is that defendants failed to disclose the fact that the underwriters, including DB Alex.Brown, had manipulated the market for certain identified securities in violation of the right of plaintiff, and the investing public, not to be misled in transactions involving the purchase and/or sale of securities. *Cf. Abing v. Paine, Webber, Jackson & Curtis,* 538 F.Supp. 1193 (D.Minn. 1982) (observing that claims were not "separate and independent" where both claims alleged the violation of a "single primary right", namely, "the right to be dealt with in an open, fair, and professional manner in their business transactions").[4] Moreover, while the events underlying both claims obviously are not fully co-extensive, they are, to a significant extent, so interwoven or so overlap as to preclude characterization as separate and independent. *See Gardner and Florence Call Cowles Foundation v. Empire Inc.,* 754 F.2d 478, 482 (2d Cir.1985) (finding claims were "separable," or not "separate and independent" "where the actions comprising the basis for the claims" "were a continuous integrated transaction").

Because the court concludes that the plaintiff's claim under the 1934 Securities Act is not separate and independent from his claim under the 1933 Securities Act, which is indisputably nonremovable, the court concludes that plaintiff's motion to remand should be granted.[5]

Accordingly, it is ordered that plaintiff's motion to remand is granted.

---

4. Defendants' reliance on *Farmers & Merchants Bank v. Hamilton Hotel Partners,* 702 F.Supp. 1417 (W.D.Ark.1988), is not well placed, for in that case, the claims that were found to be "separate and independent" for purposes of § 1441(c) involved the sale of two different hotels, the "Hamilton I" and "Hamilton II," with each sale involving different facts and a claim being asserted under the Securities Act of 1933 as to the sale of only one of the two hotels.

5. While the court is confident of its conclusion in this regard, the court is also mindful that "removal statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996) (noting that in amending § 1441(c), "it was Congress's intent to restrict, rather than to expand, removal jurisdiction").